IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LORENA T., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, <br> Acting Commissioner of <br> Social Security, <br><br> Defendant. | Case No. 18-cv-6348 <br><br> Magistrate Judge Sunil R. Harjani |

## MEMORANDUM OPINION AND ORDER

Plaintiff Lorena T.[1] seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits. Lorena asks the Court to reverse and remand the ALJ's decision, and the Commissioner moves for its affirmance. For the reasons set forth below, the ALJ's decision is reversed and this case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

### I. BACKGROUND

Lorena is a 51-year old woman who has been diagnosed with, among other things, anxiety, fatigue, panic disorder, agoraphobia, panic attacks, major depressive disorder, and sarcoidosis. (R. 310, 389, 456-57, 1080-90, 1137-38). The treatment of these conditions for Lorena has included cognitive behavioral therapy and medications such as Xanax and Flexeril. *Id.* at 385-92, 525. Before seeking disability and disability insurance benefits, Lorena worked as a retail manager, hairstylist, and chief of staff for the Illinois House of Representatives. *Id.* at 190, 676. Lorena testified that she goes to her parents' house while her husband is at work, so that she does

---

[1] Pursuant to Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff by her first name and the first initial of her last name or alternatively, by first name.

not have to be alone. *Id.* at 656.  On a normal day for Lorena, according to her account, she turns on a heating pad, takes Xanax, and lies down throughout the day to alleviate her anxiety and panic attacks. *Id.* at 209, 661.  Lorena further testified that she naps throughout the day due to the drowsiness caused by the Xanax. *Id.* at 209, 671-72.  Lorena's husband testified that he observed Lorena suffer from panic attacks two times a week. *Id.* at 75.  Lorena described a "full-blown" panic attack as feeling like she cannot swallow and experiencing heart palpitations, dizziness, and confusion to the point that she does not know where she is at. *Id.* at 669.

Lorena filed for a period of disability and disability insurance benefits on July 6, 2012, alleging disability beginning January 1, 2012. (R. 18).  Lorena's claim was initially denied on December 31, 2012 and upon reconsideration on June 7, 2013. *Id.* at 95, 108.  Upon Lorena's written request for a hearing, she appeared and testified at a hearing held on June 2, 2014 before ALJ David Bruce. *Id.* at 41-83.  The ALJ issued an unfavorable decision on November 14, 2014. *Id.* at 30.  Lorena and the Commissioner agreed to remand the case pursuant to sentence four of 42 U.S.C. § 405(g) on October 7, 2016, after Lorena appealed the November 14, 2014 decision to the United States District Court for the Northern District of Illinois. *Id.* at 735-38.  The Appeals Council remanded the case on January 9, 2017. *Id.* at 741-43.  The ALJ held a subsequent hearing on September 28, 2017. *Id.* at 649-690.  At the subsequent hearing, the ALJ heard testimony from Lorena and a vocational expert, Edward Pagella. *Id.*

On May 25, 2018, the ALJ issued a second decision denying Lorena's application for disability benefits. (R. 641).  The opinion followed the required five-step evaluation process. 20 C.F.R. § 404.1520.  At step one, the ALJ found that Lorena had not engaged in substantial gainful activity from January 1, 2012, the alleged onset date, through June 30, 2014, the last insured date. *Id.* at 625.  At step two, the ALJ found that Lorena had the severe impairments of anxiety disorder,

major depressive disorder, and arthritis. *Id*. At step three, the ALJ determined that Lorena did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). *Id.* at 626.

The ALJ then concluded that Lorena retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), except that she:

> can never climb ladders, ropes or scaffolds; she can occasionally climb ramps or stairs and occasionally balance, stoop, kneel, crouch or crawl; simple tasks and simple work related decisions that are defined as svp 1 or svp 2 jobs; no production rate pace work but she can perform goal oriented work; she can occasionally interact with co-workers, supervisors and the public; she can adapt to routine changes in a workplace setting that are commensurate with unskilled work; any time off task would be accommodated by normal breaks.

(R. 628). Based on this RFC, the ALJ determined at step four that Lorena could not perform her past relevant work as a district retail manager or hair stylist. *Id.* at 639-40. At step five, the ALJ found that there were jobs that exist in significant numbers in the national economy that Lorena could perform. *Id.* at 640-41. Specifically, the ALJ found Lorena could work as a sorter, assembler, or packer. *Id.* Because of this determination, the ALJ found that Lorena was not disabled. *Id.* at 641. Lorena did not file exceptions to the ALJ's May 25, 2018 decision, and the Appeals Council did not review the decision on its own. Doc. [1] ¶ 7. As a result, the ALJ's decision became the final decision of the Commissioner after 60 days. *Id.*

## II. DISCUSSION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether

3

a claimant is disabled, the ALJ conducts a five-step inquiry: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals any of the listings found in the regulations, *see* 20 C.F.R. § 404, Subpt. P, App. 1 (2004); (4) whether the claimant is unable to perform her former occupation; and (5) whether the claimant is unable to perform any other available work in light of her age, education, and work experience. 20 C.F.R. § 404.1520(a)(4); *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). These steps are to be performed sequentially. 20 C.F.R. § 404.1520(a)(4). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford*, 227 F.3d at 868 (quoting *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985)).

The ALJ found Lorena not disabled at step five of the sequential analysis because she retains the RFC to perform other work that exists in significant numbers in the national economy. Lorena argues that the ALJ did not properly evaluate her mental functioning. Doc. [17] at 7-12. Specifically, Lorena argues that the ALJ failed to make a finding as to the frequency and severity of Lorena's panic attacks, and that because of that failure, the logic of the ALJ's decision cannot be traced. *Id.* at 9. Lorena further argues that the ALJ improperly assessed Lorena's subjective allegations. *Id.* at 15-16. The Court finds significant issues with both the ALJ's lack of a specific determination as to Lorena's panic attacks, as well as the ALJ's assessment of Lorena's credibility, the cumulative impact of which undermines this Court's confidence in the ALJ's decision and leads the Court to find that the ALJ's decision is not supported by substantial evidence in the record.[2] Accordingly, for the reasons discussed below, the ALJ's decision must be reversed.

---

[2] Because the Court remands on this basis, the Court does not address Lorena's other arguments.

Lorena's RFC allowed only "normal breaks" and did not accommodate any additional off-task time. (R. 628). According to Lorena, because the ALJ did not make a finding as to the frequency and severity of Lorena's panic attacks, the court cannot trace the logic of the ALJ's decision. Doc. [17] at 9.

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon a legal error. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Although this standard is generous, it is not entirely uncritical." *Steele*, 290 F.3d at 940. Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Id.* Put another way, courts will not "scour the record for supportive evidence or rack [their] brains for reasons to uphold the ALJ's decision." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014), *as amended on denial of reh'g* (Oct. 24, 2014) (citations omitted). Instead, "the ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Id.* (citations omitted).

Courts in this Circuit have thus remanded where the ALJ crafts an RFC that does not accommodate a particular impairment without explaining why, or without making a finding with respect to the impairment. *See Sikorski v. Berryhill*, 690 F. App'x 429 (7th Cir. 2017) (remanding where ALJ made no finding regarding the required length of bathroom visits due to diarrhea caused by Crohn's disease and imposed no break-related restriction in the RFC); *Moon*, 763 F.3d 718 (ALJ erred by failing to build required logical bridge between evidence related to claimant's migraines and RFC conclusion which included no accommodation for migraines); *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004) (requiring remand where ALJ failed to give full

consideration to all of claimant's documented impairments in constructing RFC, reasoning: "Notably absent from the ALJ's order is a discussion of how Indoranto's headaches and blurred vision affected her ability to work"); *Shewmake v. Colvin*, No. 15 C 6734, 2016 WL 6948380 (N.D. Ill. Nov. 28, 2016) (remanding where ALJ failed to build accurate and logical bridge from evidence to RFC conclusion by failing to determine the duration and frequency of bathroom breaks in a workday for a claimant suffering from Crohn's disease).

Here, the ALJ made no off-task time accommodation for Lorena's panic attacks without explaining why or making a finding as to the frequency or severity of her panic attacks. The RFC states, that "any time off task would be accommodated by normal breaks." (R. 628). Yet the only explanation the ALJ provided for the normal breaks aspect of the RFC was that "normal mental status exam findings support her ability to be on task and any off task would be accommodated by normal breaks." *Id.* at 639. The ALJ did express skepticism towards Lorena's panic attack allegations throughout his opinion. For instance, in reviewing Lorena's testimony, the ALJ acknowledged Lorena's claim that she suffers daily panic attacks that can last up to a couple of hours, but emphasized Lorena's testimony that she "ha[d] never been hospitalized for anxiety and depression . . . ." *Id.* at 629. In the context of Lorena's missing appointments and discontinuing various prescriptions, the ALJ stated that Lorena's "lack of follow as recommended . . . is inconsistent with her complaints of severe anxiety with panic attacks that were debilitating and affected her daily functioning." *Id.* at 630. Lorena's ability to go on vacation and treatment notes indicating improvement also seemed to cause doubt for the ALJ with respect to Lorena's claims regarding panic attacks. *See id.* at 633, 636. However, the ALJ did not identify which facet of Lorena's allegations he was discrediting. It is woefully unclear from the record whether the ALJ

doubted that Lorena had panic attacks at all, or whether he merely doubted the frequency, severity, or duration of her panic attacks.

While the Court is mindful that the ALJ "need not discuss every piece of evidence in the record," the ALJ does have to "confront the evidence that does not support his conclusion and explain why it was rejected." *Indoranto*, 374 F.3d at 474 (citations omitted). Here, the ALJ seemed to reject Lorena's allegations that she suffered from daily, debilitating panic attacks, but the ALJ did not discuss whether he found that she had panic attacks; the frequency, severity, or duration of the panic attacks if she did have them; nor how any such panic attacks affected her ability to work. While the ALJ did not need to discuss every piece of evidence in the record, the adequate resolution of the panic attacks issue was crucial to determining Lorena's disability in this case. The vocational expert testified that if an individual "was going to be off task more than 15 percent of the workday, for whatever reasoning that may be, they would end up getting terminated from employment." *Id.* at 680. With respect to panic attacks specifically, the vocational expert testified that an individual who would regularly need to leave the workplace or go to a bathroom for a panic attack lasting a half hour would be terminated: "What's going to happen is that individual's going to end up actually get[ting] terminated from employment if this happens on a consistent and persistent basis. One, it's going to take them off task. Number two, the employer will probably send them home . . . ." *Id.* at 682-83. The vocational expert's testimony thus highlighted the necessity for a clear finding on panic attacks, as the frequency, severity, and duration of Lorena's panic attacks could make the difference between victory and demise for Lorena's disability case.[3]

---

[3] The vocational expert's testimony also highlights the harm in the ALJ's error. Had the ALJ properly assessed and made a finding regarding the frequency, severity, and duration of Lorena's panic attacks, it is possible that he would have found "normal breaks" would not suffice. In that case, Lorena could not sustain fulltime employment and would have been found disabled.

7

That is not to say, contrary to Lorena's position, that the ALJ had to discuss off-task time merely because he questioned the vocational expert on that topic. Doc. [17] at 10-11. While it is true that courts have remanded where an ALJ inquires about off-task time and then fails to address the issue in the decision, *see* Doc. [29] at 6-7 (collecting cases), the Court declines to draw such a bright line here. The Commissioner's point is well taken that the ALJ does not have to discuss each hypothetical, particularly a hypothetical that includes a limitation that the ALJ has properly rejected. *See, e.g.*, *Morris v. Barnhart*, 34 F. App'x 241 (7th Cir. 2002) (vocational expert's testimony that someone with numbness in hands would be unable to perform certain jobs became irrelevant once ALJ concluded that claimant did not suffer from such numbness); *Regis H. v. Berryhill*, No. 17 CV 6909, 2019 WL 1294667, at *8 (N.D. Ill. Mar. 21, 2019) ("[T]here were no ambiguities or unresolved issues surrounding the VE's testimony in this case with respect to a hypothetical limitation requiring leg elevation during half the workday . . . [T]he ALJ adequately explained why he rejected [the] opinion regarding leg elevation. Because the ALJ gave supported reasons for excluding the leg-elevation requirement from the RFC assessment, he was not required to discuss the VE's response to a hypothetical involving that specific limitation, and remand on this issue is not warranted."). The issue here is that it is not clear whether and to what extent the ALJ rejected Lorena's claims of panic attacks.

The Commissioner argues that no doctor recognized the need for an off-task time restriction. Doc. [28] at 5-7. According to the Commissioner, the ALJ's RFC was more restrictive than any medical opinion in the record and was adequately supported. *Id.* at 6.

The Court's review of the medical record reveals that this record, like in most social security cases, presents a mixed bag. *See* Doc. [28] at 3 (Commissioner acknowledging that this case presents "evidence going in both directions"). Some treatment notes appear to support

Lorena's allegations of frequent and severe panic attacks. *See*, *e.g.*, (R. 339 (September 2012 treatment note relaying Lorena's accounts of panic attacks with counselor reflecting "[t]he client's quality of life is diminishing"); *id.* at 520 (August 2013 treatment note stating Lorena reported having "severe panic attack" after coming back from vacation); *id.* at 1428 (July 2013 progress note in which Lorena reported experiencing 3 "panic episodes")).[4] Whereas some treatment records convey that Lorena's panic attacks were being adequately controlled with Xanax and therapy. *See, e.g.*, *id.* at 387 (July 2012 progress note indicating "no panic attacks as long as she takes Xanax"); *id.* at 516 (February 2014 treatment record, Lorena reporting "panic attacks much less intense"); *id.* at 518 (November 2013 treatment record, Lorena reporting "panic is better controlled").

At least one medical record provided direct support for the proposition that Lorena's panic attacks would result in off-task time.[5] In March 2013, Licensed Professional Counsel Lauren White-Johnson opined that Lorena suffered from "[r]ecurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week," and that she had "No useful ability to": maintain "regular attendance and be punctual"; "[c]omplete a normal workday and workweek without interruptions from psychologically based symptoms"; and "[p]erform at a consistent pace without

---

[4] Significantly, doctors repeatedly diagnosed Lorena with panic disorder, which signifies "recurrent panic attacks that occur unpredictably." STEDMANS MEDICAL DICTIONARY § 260380, Westlaw (database updated November 2014). *See, e.g.*, (R. 385, 442, 518, 524).

[5] Of course, the non-treating state agency physicians and Dr. Nicole Martinez did not recommend an RFC that required additional breaks. (R. 89-92, 102-03, 1625-33). With respect to the state agency physicians, even the ALJ acknowledged their review of records was incomplete due to timing. *Id.* at 638-39. With respect to Dr. Martinez, the Court is not entirely certain that any of the interrogatories issued to her specifically inquired about Lorena's panic attacks, or the need for additional breaks. In any event, the Court's concern is not that the ALJ could not have found, based on the medical record, that Lorena did not need additional breaks. Rather, there is enough support in the medical record indicating that she might require breaks due to panic attacks, and without a finding or articulation on the frequency, severity, or duration of the panic attacks, the Court cannot conduct a meaningful review of the ALJ's decision.

an unreasonable number and length of rest periods." *Id.* at 445-46. But, in any event, the ALJ weighed and discounted LCPC White-Johnson's opinion, and Lorena does not object to the ALJ's weighing of that opinion.

Ultimately, the panic attack question is inextricably tied to the ALJ's assessment of Lorena's credibility, which Lorena does object to. Lorena brings three main arguments with respect to the ALJ's treatment of her subjective allegations. First, she asserts that the ALJ improperly used meaningless boilerplate in stating that Lorena's statements concerning her subjective allegations were "not entirely consistent" with the record as a whole. Doc. [17] at 15. Second, Lorena takes issue with the ALJ's adverse credibility determination in light of her vacations. *Id.* Third, Lorena objects to the ALJ finding her less than credible in light of her failure to comply with medications other than Xanax. *Id.* at 16.

On Lorena's meaningless boilerplate argument, the Court finds that the Commissioner has the right of it. *See* Doc. [28] at 12-13. That is, so long as the ALJ goes on to provide support for the generic statement that the claimant's allegations are not entirely consistent with the record, no fatal error has occurred. *See Pepper v. Colvin*, 712 F.3d 351, 367–68 (7th Cir. 2013) ("[T]he simple fact that an ALJ used boilerplate language does not automatically undermine or discredit the ALJ's ultimate conclusion if he otherwise points to information that justifies his credibility determination."). The ALJ here did provide reasons for finding Lorena discredited, such as her vacations and noncompliance with medicine. The Court is therefore not concerned that the ALJ failed to provide reasons for not believing Lorena. However, the Court is troubled by a substantial quantity of reasons the ALJ gave for discrediting Lorena, including the ALJ's treatment of vacations, noncompliance, and the ALJ's repeated mischaracterization of the record in assessing Lorena's credibility.

"[A]n ALJ's credibility determinations are generally entitled to deference . . . ." *Ghiselli v. Colvin*, 837 F.3d 771, 778 (7th Cir. 2016). Because the ALJ "is in the best position to observe witnesses, we usually do not upset credibility determinations on appeal so long as they find some support in the record and are not patently wrong." *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994). Yet for determinations based on "objective factors or fundamental implausibilities, rather than subjective considerations such as the claimant's demeanor," the Court has "greater freedom to review." *Ghiselli*, 877 F.3d at 778 (internal quotation marks and citation omitted).

The Seventh Circuit has remanded decisions containing credibility determinations that: equate a claimant's ability to perform household chores to the ability to sustain fulltime employment; *see, e.g.*, *Stark v. Colvin*, 813 F.3d 684, 688 (7th Cir. 2016) (remanding and observing that Seventh Circuit has repeatedly rejected as naïve idea that claimant's persistence in struggling through household chores means that claimant can manage the requirements of the workplace); *Engstrand v. Colvin*, 788 F.3d 655, 661 (7th Cir. 2015) (remanding where ALJ wrongly evaluated significance of claimant's daily activities by "fail[ing] to understand that working sporadically or performing household chores are not inconsistent with being unable to engage in substantial gainful activity"); identify factors improperly analyzed or unsupported by substantial evidence; *Ghiselli*, 837 F.3d at 778-79 (remanding and finding credibility determination patently wrong where "the main factors identified by the ALJ as informing his negative assessment of Ghiselli's credibility were either improperly analyzed or unsupported by substantial evidence"); rely "on inferences that are not logically based on specific findings and evidence"; *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017) (remanding where ALJ drew impermissible inferences from claimant's activities); and/or are based on "serious errors in reasoning"; *Carradine v. Barnhart*, 360 F.3d 751, 753-54 (7th Cir. 2004) (citation omitted) ("The

11

administrative law judge thought that Carradine was exaggerating her pain—that it was not severe enough to prevent her from working. Ordinarily this determination would be conclusive upon us, but in this case the administrative law judge based his credibility determination on serious errors in reasoning rather than merely the demeanor of the witness, and when that occurs, we must remand.").

Importantly for this case, the Seventh Circuit has specifically disfavored adverse credibility determinations based on the claimant's ability to attend a vacation without adequate explanation or questioning by the ALJ. In *Murphy v. Colvin*, the Seventh Circuit held that substantial evidence did not support the ALJ's determination that the claimant was not credible because she took two vacations. *Murphy v. Colvin*, 759 F.3d 811 (7th Cir. 2014), *as amended* (Aug. 20, 2014). In *Murphy*, the ALJ found the claimant less than credible because she took a vacation three months after she had a stroke, and another one year later. *Id.* at 817. The Seventh Circuit initially found the evidence did not support the inference the ALJ drew between the claimant's symptoms and her ability to take a vacation: "The ALJ's assessment might have withstood scrutiny if, upon questioning Murphy and her husband, the ALJ found evidence that Murphy, for example, went on a whitewater rafting vacation, walked with lions in Africa, or ran with the bulls in Spain. If Murphy was able to do these types of activities, legitimate questions would be raised as to the veracity of her claims." *Id.* The *Murphy* Court went on to reason that even if the record suggested the claimant engaged in less strenuous activity on vacation, the ALJ's determination could have withstood scrutiny had the ALJ indicated how going on vacation was inconsistent with the claimant's degree of physical limitation. *Id.* "Given the limited information in the record," the court did not think a relaxing vacation with claimant's family members would be "inconsistent with her symptoms to the point where her credibility would be diminished." *Id.* In conclusion, the Seventh Circuit

emphasized the ALJ's failure to ask follow-up questions about the vacations: "Once again, we cannot assess the validity of the ALJ's determination because the record is devoid of information that might support her assessment and the ALJ did not ask follow-up questions that might prove insightful." *Id. See also Cullinan*, 878 F.3d at 603 (citations omitted) ("In *Murphy* we decided that the ALJ erred in concluding that the claimant's vacation undermined her claim of stroke-related impairments. We noted that the ALJ did not determine what the claimant did on vacation, and we suggested a vacation relaxing on the beach would have been consistent with the claimant's testimony regarding the severity of her impairments.").

In this case, similar to *Murphy*, the ALJ discounted Lorena's subjective allegations due to vacations she took without determining what Lorena did on those vacations, or asking follow-up questions about the vacations. The record here, also like in *Murphy*, does not reveal much about the trips. The evidence shows Lorena went to Florida with friends in March 2013 and New York City and Atlantic City with family in August 2013. (R. 452, 1428). Lorena reported suffering from panic attacks during her Florida vacation. *Id.* at 452. She also reported experiencing heightened anxiety and panic attacks upon returning from her New York City and Atlantic City trip. *Id.* at 520, 1428. Beyond that, the record is silent as to Lorena's vacations. In discounting Lorena's credibility, the ALJ cited Lorena's vacations, emphasizing that Lorena went to New York City and Atlantic City after allegedly suffering panic attacks during her Florida trip:

> Despite her allegations of having panic attacks while vacationing in Florida, the claimant went again on vacation within a couple of months. Her behavior is inconsistent with her allegations and supports more activities and abilities than alleged. Although going on two vacations is not dispositive of my findings but it was considered with all the other evidence of record to support the claimant is more able and capable than alleged.

*Id.* at 633.

The Commissioner argues that because the ALJ explained that he found Lorena's subjective allegations incredible because she took subsequent trips after having a bad experience during her Florida vacation, that this case is distinguishable from *Murphy*. Doc. [28] at 13. While this ALJ's articulation may have more to it than the ALJ's did in *Murphy*—indeed, the ALJ here even stated that the Florida vacation was out of state traveling inconsistent with Lorena's allegations of extreme social anxiety and inability to leave the house, (R. 633)—the *Murphy* Court did not solely object to the ALJ's articulation of the vacation assessment. Rather, the Seventh Circuit's remand was also based on the ALJ's failure to determine what the claimant did on the vacations, the ALJ's failure to ask follow-up questions about the vacations, and the fact that the limited information in the record about the vacations did not indicate that the claimant's trips were "inconsistent with [claimant's] symptoms to the point where her credibility would be diminished." *Murphy*, 759 F.3d at 817. Here too, the ALJ did not make a finding as to what Lorena did on vacation. It is possible that she had the opportunity to isolate herself in a hotel room during a panic attack, or that she tried to use Xanax to get through the trips but was unsuccessful, neither of which would be inconsistent with her claim of panic attacks. Like in *Murphy*, we do not know the details from the record, and the ALJ failed to "ask follow-up questions that might prove insightful." *Id.* The Court therefore finds that the ALJ's adverse credibility finding based on Lorena's vacations is problematic.

The Seventh Circuit has also taken issue with an ALJ's discrediting a claimant for noncompliance with treatment. A claimant's statements about symptoms "may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." SSR 96–7p, 1996 WL 374186, at *7. However, "such

evidence should not negatively affect an individual's credibility if there are good reasons for the failure to complete the plan." *Murphy*, 759 F.3d at 816 (citation omitted). As a result, "an ALJ may need to question the individual at the administrative proceeding to determine whether there are good reasons the individual did not seek medical treatment or fully comply with prescribed treatment." *Id.* (citations omitted). Good reasons for not following a treatment may include "an inability to afford treatment, ineffectiveness of further treatment, or intolerable side effects." *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) (citations omitted). The Seventh Circuit has also held that mental health concerns may prevent a claimant from following treatment. *See Kangail v. Barnhart*, 454 F.3d 627, 630 (7th Cir. 2006) ("[M]ental illness in general . . . may prevent the sufferer from taking her prescribed medicines or otherwise submitting to treatment.").

Lorena objects to the ALJ's finding she was not credible in light of her failure to comply with all medications but Xanax. Doc. [17] at 16. In assessing Lorena's credibility, the ALJ found that Lorena's "medication management," specifically her decision to stop Lexapro and Buspar and her failure to fill the prescription for Effexor XR, showed that she was non-compliant with treatment, and that that non-compliance was inconsistent with Lorena's complaints of severe anxiety with panic attacks. (R. 630-31). The ALJ later recognized Lorena's sensitivity to medication but stated that "logically a person cannot be aware of side effects if she does not take the medication." *Id.* at 634. Yet, as the ALJ even observed, Lorena discontinued Lexapro and Buspar due to headaches. *Id.* at 630-31. Lorena moreover testified that she had experienced weight loss, fatigue, and lethargy when taking antidepressants in the past. *Id.* at 661-63. When those side effects are combined with the fact that Lorena has been diagnosed with mental health disorders, such as panic disorder, anxiety disorder, and depression, it seems that Lorena had good reasons for not complying with various medications. The Court consequently finds the ALJ should not have

15

made an adverse credibility determination for Lorena's failure to take medications other than Xanax.

Finally, the Seventh Circuit has remanded ALJ credibility determinations based on mischaracterizations of the record. *See Terry v. Astrue*, 580 F.3d 471 (7th Cir. 2009) (remanding where ALJ repeatedly mischaracterized the record in identifying purported inconsistencies in claimant's testimony). Here, the ALJ based his credibility determination on at least three mischaracterizations of the record.

First the ALJ found that Lorena's allegations were not credible because she reported to a chiropractor in July 2012 that she considered herself to be in very good health. (R. 630). According to the ALJ, that "thought pattern is contrary to her allegations of having severe anxiety, depression, pain and fatigue that keeps her from working since January of 2012." *Id.* But, even a cursory glance at Lorena's report from July 2012 belies the ALJ's characterization. While the first paragraph does include Lorena's positive statement that she considered herself to "be in very good health," the next couple of paragraphs detail her report of a ten-month old problem "with her low back pain with burning into the extremities which bother[s] her constantly . . . ." *Id.* at 256. Lorena also advised that she had a persistent problem with anxiety with symptoms that appeared "to be getting worse with time." *Id.* Lorena further stated that her anxiety condition was severe and that her symptoms "extremely interfered with her social activities." *Id.* The ALJ's statement that Lorena reported being in good health in July 2012 is accordingly misleading at best.

Second, the ALJ stated that a treatment record of Dr. Lima's from May 2014 indicated that there "was no indication of significant issues to warrant more frequent treatment presentations." (R. 634-35). The ALJ also hinted that the May 2014 record was inconsistent with Lorena's reports of worsening symptoms. *Id.* at 634 ("Despite the claimant's reports of worsening symptoms, Dr.

16

Lima still assessed the Claimant with a GAF at 65-70."). The Court finds that this handling of the record also constitutes mischaracterization. In connection with Lorena's May 2014 visit, Dr. Lima's diagnostic impression was that Lorena had panic disorder without agoraphobia, and GAD (Generalized Anxiety Disorder), which Dr. Lima stated was "worse recently after diagnosis of Fibromyalgia." *Id.* at 1101. In her finding regarding Axis 4, Dr. Lima concluded "Moderate to severe." *Id.* While Dr. Lima did assess Lorena's GAF at 65-70, two months prior she assessed Lorena of having the better score of 70-75, which is consistent with Lorena's claim that her symptoms were worsening. *Id.* at 1103. As for the ALJ's assertion that the 12-week period indicated that Lorena had no significant issues, that concept appears to be pulled out of thin air. Dr. Lima consistently saw Lorena on a 12-week basis, even while listing moderate to severe diagnostic impressions. *See*, *e.g.*, *id.* at 1101, 1103, 1105. The Court therefore finds that the ALJ mischaracterized the May 2014 treatment record from Dr. Lima as well.

Third, while discussing Lorena's therapy from July 2012 to September 2012, the ALJ found that Lorena "failed to keep up with therapy and missed her October 3, 2012 visit." (R. 631). That statement appears to go hand-in-hand with the ALJ's assessment that Lorena's noncompliance with treatment meant that she was less than credible. However, Lorena specifically testified that she did not continue with therapy because her insurance changed, not that she could not keep up with therapy. *Id.* 662. Moreover, while one treatment record indicates that Lorena's next therapy session after the September 26, 2012 appointment would be on October 3, 2012, *id.* at 344, the Court can find no other support in the record for the ALJ's claim that Lorena missed an October 3, 2012 appointment. The ALJ's finding that Lorena could not keep up with therapy and missed her October 3, 2012 appointment thus mischaracterized the record. When that mischaracterization is combined with the others, as well as the ALJ's improper reliance on

Lorena's vacations and her decision to discontinue medications for good reasons, the ALJ's credibility determination rests on shaky grounds.

In sum, the Court finds that the cumulative impact of the ALJ's failure to make a specific finding as to Lorena's panic attacks and the ALJ's improper credibility determination is that the ALJ's decision is not supported by substantial evidence. Pulling everything together, this case is a lot like *Moon*. In *Moon*, the ALJ found the claimant's headaches to be a severe impairment at step two of the disability analysis but failed to explain how headaches influenced his RFC determination that the claimant could perform sedentary work. 763 F.3d at 720–21. The ALJ in *Moon* merely implied that headaches did not greatly impact the RFC through his skeptical treatment of the headache evidence. *Id*. at 721. On appeal, the claimant argued that the ALJ's RFC did not sufficiently account for her migraines. *Id*. The Seventh Circuit agreed, stating that the ALJ's analysis of the evidence on the claimant's migraines was not "logically connected to his determination of her residual functional capacity." *Id*. The *Moon* Court found that even if the ALJ did not mean to imply that the claimant did not suffer from migraines, the analysis of the migraine evidence was problematic in several respects. *Id*. at 721-22. The court further reasoned that the ALJ's scant discussion of the claimant's migraines could be due to the ALJ's overall skepticism as to the claimant's credibility, but that that assessment was also troublesome: "Perhaps the ALJ's apparently dim view of Moon's testimony about her migraines resulted in part from his broader skepticism of her credibility, but his more general credibility assessment is problematic as well." *Id.* at 722. In remanding, the *Moon* Court concluded that the ALJ failed to build a logical bridge between substantial evidence regarding migraines and the RFC conclusion, but did not require the ALJ to credit the claimant's testimony.

This Court follows the *Moon* Court's lead. On remand, the ALJ must explain the connection between the evidence of Lorena's panic attacks and his conclusion that she could sustain a fulltime job with "normal breaks." In connection with making that finding, the ALJ must also reassess Lorena's credibility without mischaracterizing the record or improperly relying on vacations or medication non-compliance, as discussed above. Like in *Moon*, the Court does not require that Lorena's testimony be credited, only that the ALJ properly assess her credibility.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's Motion for Summary Judgment [27] is denied. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed and this case is remanded to the Social Security Administration for further proceedings consistent with this opinion. The Clerk is directed to enter judgment in favor of Plaintiff and against Defendant Commissioner of Social Security.

**SO ORDERED.**

Dated: February 28, 2020

Sunil R. Harjani
United States Magistrate Judge